## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON LEE SMITH, Y25274, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-02039-GCS |
| | ) |
| ALFONSO DAVID, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Aaron Lee Smith, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center ("Shawnee"). (Doc. 1). Specifically, Plaintiff alleges that Defendant Alfonso David failed to treat his back injury, ignored recommendations from specialists, and/or delayed his access to needed care. The Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 4) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the IDOC, Wexford, and this Court.

allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that "one year prior to filing [his] grievance" he began to report extreme back pain to Shawnee's healthcare unit. (Doc. 1, p. 6). He alleges he was seen by numerous staff members, but everyone "largely ignored" his complaints, and he was not provided with any treatment. *Id.* He claims that due to the lack of treatment, he ultimately developed severe spinal stenosis, which was not detected until he had an incident of unbearable pain that required a trip to the hospital. He claims that this incident began when he had a "severe attack of pain" and was escorted to the healthcare unit via wheelchair.

While in the healthcare unit, Plaintiff claims his pain was intolerable, but in consultation with Defendant Dr. David, healthcare staff only provided minor pain medication. (Doc. 1, p. 6). At some point during the evening, Plaintiff fell while attempting to get out of bed. He claims he laid unconscious and was later escorted to the hospital. After diagnostic tests were conducted, *i.e.*, an ultrasound, MRI, and CT scan, it was confirmed that he had moderate to severe spinal stenosis. Plaintiff alleges that the doctors and specialists at the hospital recommended urgent and immediate "OT" services and a neurosurgery consultation. Plaintiff alleges Dr. David has consistently ignored these recommendations and as of the filing of his complaint, he had yet to see a neurosurgeon. (Doc. 1, p. 6).

In support of the complaint, Plaintiff filed additional narrative materials. His narrative indicates that his pain began in April of 2023. (Doc. 1, p. 12). He reported his serious pain multiple times to no avail. Eventually in late-April of 2024 he was scheduled for an x-ray, but he was never given a summary of the results so he did not realize he should limit his regular activities in any way. Without realizing it might be dangerous, Plaintiff opted to play basketball to get some exercise, but after a few minutes he began to experience debilitating pain. Plaintiff was unable to walk, so he was taken by wheelchair to the healthcare unit. This is the incident that ultimately led to his hospitalization. (Doc. 1, p. 12-13). After he fell in his cell, he alleges that Dr. David was contacted and gave the directive to transport him to the hospital. (Doc. 1, p. 13).

Plaintiff alleges that upon return to the prison he was "treated for a few more days, given a pair of crutches and a back brace," and then returned to the housing unit on May 28, 2024. (Doc. 1, p. 13). He alleges that upon release (either from the hospital or the healthcare unit) that he received a copy of the discharge summary which contained a recommendation for urgent OT and/or a specialist consultation. He claims that had he known earlier that he had an injury, his injury would not have progressed so severely, and he also would have limited his own physical activity. (Doc. 1, p. 14).

In addition to the narrative, Plaintiff provided two pages of nurses' notes from the day he was sent to the hospital, a two-page excerpt of the MRI report, and a one-page excerpt about a bowel obstruction. (Doc. 1, p. 17-21).

Based on the allegations in the Complaint, the Court designates the following claim:

**Claim 1:** Eighth Amendment deliberate indifference claim against Dr. David for failing to adequately address Plaintiff's moderate to severe spinal stenosis.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *See Rasho v. Elyea*, 856 F.3d 469, 475-476 (7th Cir. 2017). "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *Id.* at 728. An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.* A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

"[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

Plaintiff's allegations against Dr. David present a close call even at this early juncture. He alleges that he began reporting back problems in April of 2023, and that he received nothing other than minor pain medications between that time and his incident in May of 2024. However, he does not say anything about seeing Dr. David for an assessment from April 2023 to May 18, 2024, and he does not suggest he tried to contact Dr. David for assistance. On May 18, 2024, when he experienced the attack of extreme pain, he alleges that during his initial stay in the healthcare unit he was only provided minor pain medication "in consult" with Dr. David, but that the medication did nothing to alleviate his pain. However, once he fell to the ground and it was obvious his pain had escalated, Dr. David then gave the order to transport him to the hospital. After diagnostic testing at the hospital, he returned with recommendations for urgent OT and a neurosurgery consultation, but he alleges Dr. David never implemented these recommendations and intentionally ignored his situation.

None of the allegations prior to Plaintiff's hospitalization are sufficient to suggest deliberate indifference on behalf of Dr. David because Plaintiff does not allege that he ever personally saw Dr. David prior to hospitalization or that Dr. David ever did anything more than briefly consult with staff on the day of his severe pain incident about medications. It is also notable, that when consulted after Plaintiff's fall, Dr. David immediately directed a visit to the hospital, which weighs heavily against the notion that he was indifferent to Plaintiff's plight at that time. In contrast, however, Plaintiff alleges

that after he returned from the hospital, Dr. David refused to act upon the recommendations that the doctors and specialists from the hospital made about his spinal stenosis. Prison doctors are not mandated to follow specialist recommendations, but Plaintiff implies that Dr. David did nothing at all and ignored his lasting pain after his trip to the hospital. This is sufficient to survive initial review, because reading these allegations in Plaintiff's favor, he may be able to demonstrate that Dr. David ignored recommendations and left him to suffer in pain.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Alfonso David.

The Clerk of Court is **DIRECTED** to prepare for Defendant Alfonso David: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  November 4, 2024.**

Digitally signed by
Judge Sison
Date: 2024.11.04
12:51:13 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.